discharge of his official duty, within the principle of the law which makes the killing murder, when it would not have been murder if he had not been an officer; and the constable can justify by those acts only which would have justified the landlord if he had personally distrained.

2. A distress for rent is not lawful, unless there was an express contract for a certain rent.

3. If a tenant kill a constable who comes to make an unlawful distress, the jury may, according to the circumstances of the case, find their verdict for manslaughter.

This was an indictment charging the prisoner [Elizabeth Williams, alias Betsy Chinguapin] with murder by killing one Elijah Chenault, a constable, who came to the house occupied by the prisoner to levy a distress for rent, under a written order from one Holbrook, the landlord, in these words: "Alexandria, 31st July, 1823. Betsy Williams to Abiel Holbrook, Dr. To rent, two months and fifteen days, $6.25. Mr. Chenault: Distrain for this rent, and compel Williams to quit the premises immediately."

Upon the trial, Mr. Taylor, for the prisoner, prayed the court to instruct the jury: (1) That the order did not purport to be an authority to him to act as constable; (2) that, if it does so import, it is not a warrant to which the prisoner was bound to yield implicit obedience, and that it is not evidence of a right to distrain, or to dispossess the tenant; and (3) that the order was illegal on its face.

Mr. Swann, Attorney of the United States, contra. The law contemplates that distresses will be made by a sheriff or other officer. Their fees for levying a distress are regulated by law. It is not necessary in the order to call him "constable," if he were in fact a constable. It is generally understood in Virginia that a distress can only be made by an officer. The order to distrain is not vitiated by the order to turn the tenant out of possession.

THE COURT (THRUSTON, Circuit Judge, absent) instructed the jury that Chenault, in executing the order to distrain, was not acting in the discharge of his official duty, within the principle of law which makes the killing murder when it would not have been murder in case of the killing of a man who was not an officer, because he was executing a private authority only, and not acting in the public administration of justice; and that Chenault could only justify his act by the same facts which would have justified the landlord if he had personally distrained.

THE COURT also instructed the jury, at the prayer of the prisoner's counsel, that the distress was not lawful, unless there was an express contract for a certain rent.

THE COURT also was of opinion that it was competent for the jury, upon this indictment, to bring in a verdict of manslaughter, although they should be satisfied that Chenault was not then in the execution of his official duty when he was killed.

Verdict, guilty of manslaughter.

## Case No. 16,711.

### UNITED STATES v. WILLIAMS.

[3 Cranch, C. C. 65.] [1]

Circuit Court, District of Columbia. Dec. Term, 1826.

#### TRANSPORTATION OF SLAVE—INDICTMENT.

In an indictment under the 19th section of the Maryland act of 1796, c. 67, for aiding and advising the transportation of a slave, there must be an averment of transportation from the District.

Indictment [against Abraham Williams] under the 19th section of the Maryland act of 1796, c. 67, for aiding, assisting, encouraging, and advising the escape of a female slave of W. L. Brent, "by means whereof she was put into a stage to be transported out of the District." The words of the act are: "Any person who shall be found to assist by advice, donation, or loan, or otherwise, the transporting of any slave, or person held to service, from this state, or by any other unlawful means depriving a master or owner of the service of his slave or person held to service; for every such offence the party aggrieved shall recover damages in an action on the case against such offender, and such offender also shall be liable upon indictment to be fined a sum not exceeding $200."

THE COURT said there must have been a transporting of the slave out of the District or the offence was not complete.

Verdict, "Not guilty."

## Case No. 16,712.

### UNITED STATES v. WILLIAMS.

[4 Cranch, C. C. 372.] [1]

Circuit Court, District of Columbia. Nov. Term, 1833.

#### CIRCUIT COURT D. C. — SPECIAL CRIMINAL SESSIONS—ATTACHMENTS FOR WITNESSES.

1. The circuit court of the District of Columbia has power to hold special sessions for the trial of criminal causes; and has jurisdiction, at a special session, to try offences committed between the time of ordering and the time of holding such session; and its jurisdiction is not limited to such causes of federal jurisdiction as may be tried in a circuit court of the United States sitting in a state.

2. The circuit court of the District of Columbia, has all the powers which, by law, were vested in the circuit courts of the United States on the 27th of February, 1801, and, among others, the power to send attachments into any other district, for witnesses in criminal cases.

[Cited in Ex parte Pleasants, Case No. 11,225.]
[Cited in U. S. v. Burdick, 1 Dak. 142, 46 N. W. 572.]

Indictment [against Christiana Williams] for keeping a house of ill fame, found at the special session in September last, and continued over, by law, to this term.

Mr. Dandridge, for defendant, moved the

[1] [Reported by Hon. William Cranch, Chief Judge.]